# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Savannah Division

**FILED**

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By dreese at 12:11 pm, May 26, 2015

In the matter of:            )

JANETTE ALEGRIA        )

                    *Debtor* )

Chapter 13 Case

Number <u>08-41769</u>

## OPINION AND ORDER ON TRUSTEE'S MOTION TO DISMISS

This case is before the Court on the Motion to Dismiss (the "Motion") filed by the Chapter 13 Trustee (the "Trustee"). (Dckt. 78.) The subject of the Motion is Janette Alegria's ("Debtor") one-half interest in her former marital residence. *Id.* The Trustee contends that Debtor's non-exempt equity in that interest should have been turned over for disbursement to creditors pursuant to language included in the Order Confirming Plan. *Id.* Instead, Debtor executed a quitclaim deed, transferring her interest in the real estate to her former husband, Ruben C. Alegria ("Mr. Alegria"), for no consideration. The issue presented is whether Debtor's voluntary conveyance of her one-half interest in the subject property post-petition, without notice to the Trustee or permission of the Court, and Debtor's failure to take any steps to liquidate her interest in favor of her creditors are sufficient grounds to dismiss Debtor's case under 11 U.S.C. § 1307(c). The Court finds that they are, and the Trustee's Motion will be GRANTED.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by Chief Judge Anthony A. Alaimo on July 13, 1984. This is a ''core proceeding'' under 28 U.S.C. § 157(b)(2)(A). In accordance with Bankruptcy Rule 7052, the Court makes the following Findings of Fact and Conclusions of Law.

## II. FINDINGS OF FACT

### A. Procedural History

On September 24, 2008, Debtor filed her Chapter 13 Petition and her proposed Plan to repay creditors. (Dckts. 1, 5.) In Schedule A of her Petition, Debtor listed among her assets an interest in real estate. (Dckt. 1.) The language in Schedule A regarding the real estate is quoted herein verbatim: "[h]ome located Rt. 1 Box 74 Ludowici, GA 31316 given to ex-husband in divorce decree final 2/14/2007 she has claim for $20,000 equity when the house sells. must sell prior to 2010."[1]   *Id.*

Debtor valued the real estate at $150,000.00, subject to a first mortgage of $72,000.00 in favor of Wells Fargo Mortgage.   *Id.*   Debtor's amended Plan before confirmation proposed payments of $422.00 per month for sixty (60) months which would pay unsecured creditors the greater of a zero % dividend or a pro-rata share of $100.00. (Dckt. 28.) The amended Plan also addressed the claim of Wells Fargo Mortgage which was

---

[1] The property is also known as 1992 Palmer Rd. NE, Ludowici, GA 31316. (Trustee's Ex. D.)

classified as contingent and to be paid by a third-party. *Id.*

Debtor's amended Plan was confirmed by the Court on May 28, 2009. (Dckt. 59.) The Order Confirming Plan provided that should the former marital residence be sold, Debtor would turn over her share of the proceeds (less any exemption) to the Trustee. *Id.* Because the Court's permission was not required for the sale of the marital residence and because Debtor pledged to tender her share of the proceeds to the Trustee upon a refinance/sale, periodic status conferences were scheduled so that Debtor could update the Court and the Trustee on the efforts made to realize her interest in the property. These conferences were held on November 15, 2010, and January 18, 2011. (Dckts. 66, 69.) At the hearing on the Motion to Dismiss, the Trustee tendered into evidence and the Court admitted without objection, transcripts from those status conferences. (Trustee's Exs. E, F.)

The parties do not dispute that Debtor has now made all sixty (60) of her monthly plan payments. However, she failed to tender her non-exempt equity in the marital residence to the Trustee. Therefore, the Trustee filed this Motion on December 3, 2014. (Dckt. 78.) In order to gather information related to the property for the hearing on the Motion, the Trustee conducted a Rule 2004 Examination of Debtor on March 10, 2015. (Dckt. 89.) The Motion to Dismiss came on for hearing April 20, 2015.

B. The Debtor's Interest in the Real Estate Under the Divorce Decree

Debtor married her second husband, Mr. Alegria, on May 4, 1987. (Trustee's Ex. H.) The couple purchased a residence on Palmer Road in Ludowici, Georgia. *Id.* Debtor valued the property at $150,000.00 in Schedule A of her Petition, subject to a

mortgage in favor of Wells Fargo[2] in the amount of $72,000.00 as reflected in Schedule D. (Dckt. 1.) Debtor filed a divorce action against Mr. Alegria in the Superior Court of Wayne County, Georgia on December 15, 2006, and he was served with that complaint on December 18, 2006 (Trustee's Ex. H.), while he was incarcerated in federal prison. The parties then entered into a Separation Agreement which was signed by Debtor on January 12, 2007. *Id.* Mr. Alegria executed the Separation Agreement while still in prison. The divorce decree, which incorporated the Separation Agreement, was issued on February 14, 2007.[3]

Under the terms of the Separation Agreement, Debtor was granted temporary use of the marital residence until Mr. Alegria was released from federal prison, and she was responsible for paying the mortgage and expenses during that time. *Id.* When Mr. Alegria was released from prison in October 2007, he took possession of the residence and became responsible for the mortgage payments and expenses. *Id.*

With regard to the ultimate disposition of the real estate, Article 8 of the Separation Agreement provided as follows:

**Right of First Refusal to Buy:** The Husband shall have

---

[2] The security deed attached to the proof of claim filed by Wells Fargo reflects an original debt of $77,500.00 as of May 24, 2004. (*See* Claim No. 3.)

[3] The parties did not submit a copy of the divorce decree. Instead the Court admitted into evidence, without objection, Trustee's Exhibit H, which consists of the following: (1) a copy of the Separation Agreement (with a case caption in the Superior Court of Wayne County, Georgia, Civil Action File No. 06CV0766), signed only by Debtor; (2) a copy of a Consent pleading, granting the divorce 31 days after service of the Complaint, signed only by Debtor; (3) a copy of the Domestic Relations Stipulation, signed only by Debtor; (4) an unsigned copy of the Statement of Spouse Regarding Legal Rights in Divorce Action; and (5) an unsigned copy of a Motion for Judgment on the Pleadings.

a right of first refusal respecting any sale of the former Marital Residence. To enable the Husband to exercise such right of first refusal, the Husband shall have three (3) years from the date of release from the Federal Correctional Institution to pay unto the Wife the sum of Twenty Thousand and no/100 (20,000.00) dollars in a lump sum payment. Upon payment of said amount, the Wife shall quitclaim all of her interest and rights in the said marital residence to the Husband within ten (10) days after receiving said amount. In the event the Husband fails to exercise such right in the manner set forth in this subparagraph, this right shall be deemed an irrevocable waiver thereof and the parties *shall* sell the marital residence. The Husband and Wife will set a sales price together or if they cannot agree as to a sales price, then the Husband and wife *shall* list the property with a real estate agent and allow the agent to set a sales price. Upon sale of the marital property, the parties will split any net proceeds as follows: The Wife shall receive Fifty (50%) percent, and the Husband shall receive Fifty (50%) percent.

(Trustee's Ex. H)(emphasis added.)

C. Debtor's Confirmed Plan

As stated *supra*, Debtor's confirmed Plan proposed payments of $422.00 per month for sixty (60) months, rendering a zero % dividend or a pro-rata share of $100.00 to unsecured creditors. (Dckt. 28.) The Order Confirming Plan contained the following requirements:

7. Should the Debtor's former marital residence be sold pursuant to her divorce decree and should Debtor realize proceeds from the sale; [sic] Debtor shall tender her proceeds to the Chapter 13 Trustee and Debtor reserves the right to claim an exemption in said proceeds.
8. Debtor shall report any lump sum cash payments made by her ex-spouse pursuant to her divorce decree to her attorney and to the Chapter 13 Trustee.
9. Debtor's compliance with paragraphs 7 and 8 above is

a requirement for discharge in the above referenced case.

(Dckt. 59.)

D. Post-Confirmation Events

Debtor has now made all sixty (60) of her monthly Plan payments, however, as mentioned *supra*, she never tendered any proceeds from her interest in the marital residence to the Trustee. Two status conferences were held so that Debtor could update the Court and the Trustee on any developments regarding the property.

At the November 15, 2010 status conference, Debtor's counsel relayed to the Court that Debtor had recently spoken to Mr. Alegria about her $20,000.00 interest, and it was his understanding that Mr. Alegria would be marketing the property soon. (Trustee's Ex. E.) Counsel stated that he advised Debtor that Mr. Alegria needed to hire someone to list the property or she would need to list it herself. *Id.* The Court scheduled a status conference for January 2011 so that Debtor could give further updates and details regarding the marketing of the property. *Id.*

Debtor attended the January 18, 2011 status conference and told the Court that the property had not been marketed. (Trustee's Ex. F.) She further advised that Mr. Alegria preferred to refinance the house, however, due to his bad credit, he had not yet been able to secure any funds. *Id.* Debtor's counsel stated at the hearing that "if [Mr. Alegria] was unable to [refinance], he should market the property for sale, and then her interest in this property would be paid over to the Trustee." *Id.* Moreover, when the Court questioned Debtor and her counsel about possible exemptions and where the proceeds from Debtor's

interest in the property would go, Debtor responded: "The bulk [of the proceeds] would come to the Trustee." *Id.*

> Later in the hearing, the Court had the following exchange with Debtor:
>
> THE COURT: But you are still listed as a co-owner on the house.
> MS. ALEGRIA: Yes.
> THE COURT: If somebody goes and searches the records - -
> MS. ALEGRIA: Right, exactly.
> THE COURT: He can't sell it without you knowing.
> MS. ALEGRIA: Right, exactly.

*Id.*

## E. The Trustee's Motion to Dismiss

> The Trustee filed his Motion to Dismiss on December 3, 2014. (Dckt. 78.)

The Trustee's contentions in the Motion are quoted herein verbatim:

> 1. This case was filed September 24, 2008 and confirmed June 2, 2009.
> 2. Schedule A lists real estate located at Rt 1 Box 74, Ludowici, GA 31316 (1992 NE Palmer Rd, Ludowici, GA in Long County). Although Debtor's ex-husband, Ruben Alegria, was awarded the real property pursuant to a divorce decree, Debtor has an equitable interest in the real estate valued at $20,000.00 as property settlement to be paid from the sale of the real estate. The sale of the real estate was to take place by or before 2010.
> 3. The Motion to Confirm included that Debtor was to pay the non-exempt equity from the sale of the real estate into the plan as a lump sum. The Debtor stated she was unable to raise her monthly Chapter 13 payments to pay the amount of non-exempt equity and preferred paying a lump sum when the real estate sold.
> 4. On January 27, 2009, Wells Fargo filed a Motion for Relief from Stay for the subject property against both the Debtor and Ruben Alegria.

5. At the time of the hearing on the Motion for Relief, it was stated that the ex-husband still resided in the subject property. He would either sell the real estate or pursue refinancing the mortgage loan in order to pay the Debtor $20,000.00 as required by the divorce decree.

6. The Chapter 13 Trustee requested a status conference to be held every 6 months to track the sale or the refinancing of the real estate.

7. On February 2, 2010 [sic], the Debtor signed a Quitclaim Deed to the property in favor of Ruben Alegria.

8. A Status Conference was held November 15, 2010.[4] The Debtor stated Ruben Alegria would not sell the real property but instead was pursuing refinancing the real property.

9. Again, the Trustee agreed not to raise her monthly Chapter 13 payment to pay the equity in the real estate in favor of the Debtor paying in a lump sum representing the non-exempt equity of the real estate.

10. To date, the Debtor has failed to pay the non-exempt equity in real estate. The Trustee requests the case be dismissed for Debtor's failure to pay the non-exempt equity in real estate.

*Id.*

F. April 20, 2015 Hearing

The Trustee's Motion to Dismiss came on for hearing April 20, 2015, where Debtor was the only witness to testify. The Trustee's questions centered primarily on Debtor's efforts to realize her interest in the former marital residence, and the quitclaim deed admitted as Trustee's Exhibit D.

When asked about the note in Schedule A of her Petition stating that the house must sell before 2010, Debtor answered that the agreement between her and Mr.

---

[4] It appears the Trustee is actually referring to the January 18, 2011 status conference. Debtor was not present at the November 15, 2010 status conference.

Alegria was that he had three years after being released from prison to refinance/sell the real estate in order to pay her the $20,000.00. Mr. Alegria was released from prison in October 2007. Debtor testified that she never received the $20,000.00, she and Mr. Alegria never set a sales price for the home, she and Mr. Alegria never listed the home with a real estate agent (as required by the Separation Agreement), she never personally engaged a real estate agent, and to her knowledge, Mr. Alegria never engaged an agent or attempted a sale by owner. Debtor further testified that she was unaware of whether Mr. Alegria ever submitted an application for refinancing of the property but stated that she herself had not.

The Trustee tendered into evidence and the Court admitted without objection a one page affidavit of Debtor dated November 19, 2014, stating that Mr. Alegria "resides in the property; debtor could not force him to sell the property, nor does she make enough money for it to be feasible to have brought him to court in a contempt action to force him to sell the property." (Trustee's Ex. G.) Debtor testified that she never contacted an attorney to determine the cost of bringing such action. Debtor also stated that her minor child was in school and lived in the home during the pendency of her case, and that this fact affected her decision on how hard to push Mr. Alegria into selling the property. In fact, Debtor stated that she did not want the property sold at that time, and that her only efforts to force Mr. Alegria to sell or refinance were to discuss the matter with him.

The Court also admitted into evidence without objection the quitclaim deed dated February 22, 2010, in which Debtor conveyed her interest in the marital residence to Mr. Alegria "in consideration of the sum of ten and 00/100 dollars ($10.00)." (Trustee's Ex. D.) Debtor stated that she did not receive any consideration for executing the deed. Debtor

testified that she signed the deed so that Mr. Alegria could get a loan in order to purchase a dump truck for work. Debtor did not understand the legal ramifications of executing the deed. Debtor stated that she specifically asked the bank representative if signing the document would prevent her from recognizing the $20,000.00 in the future, to which the representative replied that it would not and the deed was only to allow Mr. Alegria to get the loan. Debtor testified that in her opinion, Mr. Alegria would admit he still owes her the $20,000.00.

The parties stipulated that Wells Fargo filed a claim for $70,995.00 on the real estate in Mr. Alegria's bankruptcy case in 2013. Debtor tendered into evidence and the Court admitted without objection, a Uniform Residential Appraisal Report for the property with an effective date of January 14, 2013. According to the report, the appraised value of the property as of the effective date was $90,000.00. The Trustee stated that he had no evidence with which to contradict the value in the report. Debtor testified that Mr. Alegria obtained the report for the purpose of his bankruptcy case.

G. Mr. Alegria's Bankruptcy Case

Mr. Alegria filed a personal Chapter 13 Petition on January 30, 2013, in the Brunswick Division. (Case No. 13-20105, dckt. 1.) Mr. Alegria's Plan requiring him to pay $435.00 per month to the Trustee for a period of sixty (60) months was confirmed by Court Order on May 14, 2013. (Case No. 13-20105, dckts. 2, 27.) The Court later granted the Trustee's Motion to Increase Payments, and Mr. Alegria's monthly Plan payment increased to $466.00. (Case No. 13-20105, dckts. 29, 33.) As stated *supra*, Wells Fargo filed a claim secured by the marital residence in the amount of $70,995.63. (*See* Case No. 13-20105,

Claim No. 3.) According to the Claims Register, Debtor did not file a claim in Mr. Alegria's bankruptcy case; nor does Mr. Alegria's Petition or Plan mention the obligation to pay Debtor her interest in the real estate. (Case No. 13-20105, dckts. 1, 2.)

## III. CONCLUSIONS OF LAW

The dismissal section of Chapter 13, 11 U.S.C. § 1307, states that: "on request of a party in interest or the United States trustee and after notice and a hearing, the court may . . . dismiss a case under this chapter, . . . for cause . . . ." The statute then enumerates eleven (11) specific occurrences which constitute sufficient cause for dismissal. *Id.* The list is non-exhaustive; hence the term "including" preceding the list in § 1307(c). *Id.* The two listed occurrences applicable to this case are: "unreasonable delay by the debtor that is prejudicial to creditors" and "material default by the debtor with respect to a term of a confirmed plan." 11 U.S.C. § 1307(c)(1), (6). As the moving party, the Trustee bears the burden of proof on a motion to dismiss under § 1307. *In re Jacobs*, 2005 WL 6742490, at *2 (Bankr. S.D. Ga. Apr. 22, 2005)(Davis, J.).

## A. There is Not Cause to Dismiss Under § 1307(c)(6)

In regards to § 1307(c)(6), the confirmed Plan's only reference to the marital residence is in Section 8, the other provisions section, which states: "Wells Fargo Mortgage to be classified as contingent, being paid by third party." (Dckt. 28.) The Order Confirming Plan states: "*Should* the Debtor's marital residence be sold . . . and *should* Debtor realize proceeds from the sale; [sic] Debtor shall tender her proceeds to the Chapter 13 Trustee . . . ." (Dckt. 59)(emphasis added.) The Trustee admitted at the hearing that the terms in the Order

were not crystal clear. And, it is undisputed that the marital residence never sold, and that Debtor has received no proceeds for her interest. Therefore, the Court concludes that Debtor did not materially default on a term of her confirmed Plan or the Order Confirming Plan in a hyper-technical sense.

However, a review of the confirmation hearing and the status conferences clearly indicates what was understood by the parties and the Court regarding Debtor's non-exempt interest in the real estate. This understanding was that Debtor would at some point realize her interest in the property and tender those proceeds to the Trustee. The sole reason for conducting the status conferences was so that the Court could track the refinance/sale of the home.

At the January 18, 2011 status conference, Debtor's counsel stated:

> the decree requires that [Mr. Alegria] either refinance, which he was unable to do due to his credit, and pay her the $20,000.00. Whereupon, our confirmation order said she would pay the trustee. Or if he was unable to or if that is not going to happen, he should market the property for sale, and then her interest in this property would be paid over to the trustee less whatever exemption she may be able to claim.

(Trustee's Ex. F.) Moreover, Debtor stated later in the conference that "the bulk [of the proceeds from the refinance/sale] would come to the Trustee." *Id.* The Court is convinced by these comments that Debtor and her counsel were well aware of her requirement to pay over her interest in the property to the Trustee at some point during the case. From a practical standpoint it makes little sense to construe Debtor's intentions and representations to the Court as requiring payment only in the event the property was refinanced/sold. In that

scenario, Debtor could simply make no effort to force Mr. Alegria to refinance/sell the property until after the bankruptcy case concluded; thereby allowing her to keep her entire interest.

So while the Court finds that Debtor did not technically violate her Plan or the less-than-clear terms of the Order Confirming Plan, the fact that all parties understood that Debtor was *required* to tender her interest in the property to the Trustee does influence the Court's conclusions regarding other sections of § 1307(c). It is also worth noting that at the confirmation hearing, the Court directed Debtor's counsel to draft the terms in the Confirmation Order related to the sale of the marital residence. The Court has been presented no evidence to the contrary.

B. There is Cause to Dismiss Under § 1307(c)(1) Because Debtor's Delay was Prejudicial to Creditors

Courts routinely dismiss cases for unreasonable delays under subsection (c)(1), including the factual scenario where a debtor made no efforts to market property that was to be sold under a plan. *In re Blaise*, 219 B.R. 946, 950 (2nd Cir. BAP 1998). Notwithstanding the terms drafted by Debtor's counsel in the Confirmation Order, Debtor was required to realize her interest in the property and tender the non-exempt portion to the Trustee because of the understanding between the parties and the representations made to the Court by Debtor and her counsel.

Debtor testified that she did not attempt to refinance or market the real estate herself. She also did not force Mr. Alegria into refinancing/selling the property by bringing a contempt action under the Separation Agreement. In fact, Debtor testified that her only

efforts to recognize her interest in the property consisted of discussing the matter with Mr. Alegria. Debtor admitted that she actually did not want the home sold during her case because her minor child was in school and living with Mr. Alegria there.

When Debtor filed her case in 2008, she listed the home's value at $150,000.00. The latest appraisal performed in 2013 by Puccio Appraisal, Inc. valued the property at only $90,000.00. (Debtor's Ex. A.) After deducting the cost of sale and the roughly $70,000.00 still owing on the property from the appraised value, it is reasonable to conclude that if the property sold today, the proceeds available to creditors after Debtor's exemption would be negligible.

And, Debtor now arguably has no interest in the property with which to pay creditors because of the quitclaim deed she executed in favor of Mr. Alegria. 11 U.S.C. § 549 allows the trustee to avoid a post-petition transfer of property of the estate.[5] However, even if the Trustee were to seek avoidance now, the home's lower value as indicated by the latest appraisal report might prevent creditors from realizing any significant benefit. Had Debtor alerted the Court and the Trustee of the intended conveyance, the Trustee might have prevented or avoided the transfer at a time when the home had a higher market value. In any event, the Court concludes that Debtor's inaction in failing to force a refinance/sale by Mr. Alegria resulted in an unreasonable delay in Debtor realizing her interest in the real estate

---

[5](a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate--
  (1) that occurs after the commencement of the case; and
  (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
  (B) that is not authorized under this title or by the court.
11 U.S.C. § 549(a).

that was prejudicial to creditors. In fact, the quitclaim deed likely prevents Debtor from realizing her interest at any time in the future.

C. There is Cause to Dismiss Under § 1307(c) for Debtor's Lack of Good Faith

As mentioned *supra*, the enumerated list of occurrences constituting cause in § 1307(c) is non-exhaustive. Indeed, the Eleventh Circuit has held: "as interpreted by the Supreme Court and nearly every federal court of appeals, "for cause" in . . . 1307(c) includes bad faith or a lack of good faith." *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1263 (11th Cir. 2013). Under this section the Court considers the totality of the circumstances of the individual case in its good faith analysis. *Meredith v. Roberts (In re Roberts)*, 2013 WL 441378, at *2 (Bankr. S.D. Ga. Jan. 24, 2013)(Dalis, J.). "The easiest way to fail the good faith test . . . is for a debtor to misrepresent, lie or otherwise mislead the court." *Id.* (*quoting In re Thomas*, 443 B.R. 213, 218 (Bankr. N.D. Ga. 2010))(internal quotation marks omitted).

Here, whether intentional or not, Debtor made misrepresentations to the Court regarding the refinance/sale of the residence. At the November 15, 2010 status conference, Debtor's counsel told the Court that "[Mr. Alegria] is going to market the property now." (Trustee's Ex. E.) At the January 18, 2011 status conference, the Court was made aware that the property had not been marketed and that Mr. Alegria had been unable to refinance the house because of poor credit. When asked by the Court if Mr. Alegria really intended to go through with a refinance, Debtor answered, "I know he will, Your Honor." (Trustee's Ex. F.) Then, some four years later at the April 20, 2015 hearing, Debtor testified that Mr. Alegria had not refinanced or marketed the property, and her only efforts to force

action by him was to discuss the matter with him. Debtor actually stated that she did not want the house sold because her son was living there. Therefore, I find that Debtor misrepresented to the Court the efforts being made to realize her interest in the property.

Moreover, at the January 18, 2011 status conference, Debtor represented to the Court that she was still listed in the real estate records as a co-owner of the house, and that Mr. Alegria could not sell the property without her knowing. However, Debtor quitclaimed her interest in the property to Mr. Alegria for no consideration almost a year earlier on February 22, 2010. Debtor did not seek permission or even notify the Court of the conveyance. Debtor testified at the April 20, 2015 hearing that she did not understand the legal effects of executing the quitclaim deed; however, "when a debtor misrepresents [to] the court, there is no "Oops defense." *Roberts*, 2013 WL 441378, at *3 (citation omitted).

"The cornerstone of the bankruptcy courts has always been the doing of equity." *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 941 (11th Cir.1986). Although Debtor may not have fully understood the legal ramifications of the quitclaim deed, equity does not favor forcing the creditors to bear the burden of her misunderstanding. Therefore, the Court concludes based on the totality of the circumstances that cause exists to dismiss Debtor's case for her lack of good faith. The Trustee has met the burden of proof for dismissal of the case under § 1307(c).

## O R D E R

Based on the foregoing Findings of Fact and Conclusions of Law, IT IS

THE ORDER of this Court that Trustee's Motion to Dismiss (dckt. 78) is GRANTED.


Dated at Savannah, Georgia, this 26th day of May, 2015.


Edward J. Coleman, III
United States Bankruptcy Judge
Southern District of Georgia